

IN THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERMAINE HARVEY<br>　　　Plaintiff, | :<br>:<br>: |
| v. | : Civil Action No.: |
| CITY OF PHILADELPHIA<br>　　　Defendant. | :<br>:<br>: |

### PRO SE COMPLAINT

1. Plaintiff Shermaine Harvey (hereinafter "Plaintiff"), hereby files this Complaint pro se against The City of Philadelphia, (hereinafter "Defendant"), alleging that her rights pursuant to the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA") have been violated, and avers as follows:

### PARTIES

2. Plaintiff resides at 2000 W. Cheltenham Avenue, Philadelphia, PA 19138.

3. Defendant City of Philadelphia ("Defendant") is a municipality of the Commonwealth of Pennsylvania with a local address of 1515 Arch Street, 17th Floor, Philadelphia, PA 19102. Defendant is an entity engaged in an industry or activity affecting commerce which employed 15 or more employees in all of its facilities each working day during each of 20 or more calendar workweeks in the current or preceding year. Defendant owns, operates, manages, directs, and controls the City of Philadelphia Department of Human Services ("DHS"), whose agents, servants, and employees at all relevant times were acting within the course and scope of their employment under color of state law and operating pursuant to official policies, customs, or practices of DHS. DHS has a local address of 1515 Arch Street Philadelphia, PA 19102.

### JURISDICTION AND VENUE

4. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

5. Subject-Matter Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331, and under the Rehabilitation Act ("Rehabilitation Act") of 1973, as amended, 29 U.S.C. §791.

6. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with the traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

7. Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) inasmuch as all parties regularly conduct business within this District and the acts complained of by Plaintiff arose herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

9. Plaintiff exhausted her administrative remedies as required under federal and state law.

10. Specifically, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on or about July 27, 2022, EEOC No. 530-2022-00593. On or about February 17, 2023, The EEOC decided not to proceed further with Plaintiff's charge and issued her a Notice of Right to Sue in federal court. Attached hereto as Exhibit "A." Plaintiff files this complaint within ninety (90) days of her receipt of the Notice of Right to Sue, as statutorily required.

## FACTS

11. On or about 1998, Plaintiff was hired by Defendant as a DHS Social Worker. On or about 2006, Defendant promoted Plaintiff to the role of Social Worker Supervisor. She performed this role without issue and received positive performance reviews.

12. In or about the year of 2011, Plaintiff was diagnosed with a qualified disability. She experienced recurring symptoms and pain from her disability and from medication side effects.

13. In or about August 2011, Plaintiff made Defendant aware of her disability. Plaintiff requested and was approved for intermittent leave under the Family Medical Leave Act ("FMLA"), which allowed her to take leave up to three (3) days at a time without a doctor's note whenever she began to experience serious recurring symptoms. This arrangement was agreed upon on a year-to-year basis and Plaintiff's primary care physician had to provide Defendant with annual medical documentation and a recommendation that her intermittent medical leave arrangement be continued.

14. On or about October 19, 2017, Plaintiff requested the medical accommodation of a standing desk in her office due to chronic back and hip pain. Defendant approved Plaintiff's request, but then failed to provide Plaintiff with the approved standing desk.

15. From November 2017- May 2019, Plaintiff repeatedly asked Defendant's management when she would receive her approved standing desk, yet Defendant never provided her a definitive answer.

16. In or about October 2017, Defendant informed Plaintiff that moving forward, she would have to submit documentation from her primary care physician every six (6) months in order to keep her intermittent medical leave, instead of every year as had been previously agreed upon. Plaintiff did not understand the purpose of modifying her FMLA arrangement in this way, yet nevertheless complied with Defendant's order. Plaintiff

consistently provided the requested medical documentation to Defendant over the next two (2) years.

17. In or about late 2018, a social worker named Kim Hightower ("Kim") was transferred to Plaintiff's unit under Plaintiff's supervision. DHS's normal practice for transferring employees is to engage in conversation with the employer's new supervisor about the transfer and the reasons for the transfer, yet here, Defendant did not engage in any conversation with Plaintiff prior to placing Kim in her unit.

18. Upon her arrival, Kim began engaging in troublesome and disruptive practices such as refusing to attend routine child service report meetings and talking back to Plaintiff in front of other coworkers.

19. In or about late 2018, Plaintiff began reporting to Sam Harrison ("Sam"), DHS Operations Director, and Cheryl Priest ("Cheryl"), DHS Social Work Administrator and Plaintiff's direct supervisor, that Kim was causing disruption to her unit. Plaintiff explained that dealing with Kim was causing her mental stress and anxiety, exacerbating her disabilities.

20. In or about February 2019, Kim falsely accused Plaintiff of bullying her. Defendant's management at DHS investigated this complaint and ultimately dismissed it due to lack of evidence. Kim began encouraging other employees to file reports against Plaintiff whenever Plaintiff took an action they did not like.

21. From 2018- 2020, Plaintiff met and communicated with both Frank Macrina ("Frank"), Defendant's Director of Intake, Region II, and Cheryl regarding her complaints and concerns.

22. In or about May 14, 2019, Plaintiff's primary care physician sent a letter to Defendant expressing concern that Plaintiff had yet to receive her standing desk accommodation even though Defendant had approved the accommodation two (2) years prior, and despite Plaintiff repeatedly asking Defendant about the desk during those two (2) years. Plaintiff's physician reiterated the necessity for this accommodation due to Plaintiff's severe daily shoulder and back pain.

23. In or about early 2019, Plaintiff asked Defendant's management to transfer some difficult employees, including Kim and Shequoya ("Shequoya") Trego, who began taking Kim's lead in complaining about frivolous maters, out of her unit due to the stress and exacerbation of her disabilities their behavior was causing. Defendant' management refused this accommodation. In response, Plaintiff began requesting that she be transferred to another unit.

24. In or about September 19, 2019, Cheryl communicated with Frank that Plaintiff felt she was unable to continue supervising Kim because the stress was making her ill.

25. On or about September 24 and 25 2019, Cheryl and Frank again communicated with each other about Plaintiff's issues with supervising Kim, but did not engage in discussions with Plaintiff to reach an accommodation.

26. From November 2019 – December 2019, Plaintiff reported to Cheryl and Frank on at least two (2) occasions that Kim had been violating discplinary rules in a way that put children safety at risk, and that Kim had walked out the office halfway through a

scheduled evaluation. Plaintiff requested a response on how she should handle such situations moving forward.

27. Instead of engaging in any meaningful interactive process with Plaintiff to find a solution to the health issues caused by her work environment, Defendant's management simply advised Plaintiff to write-up her employees more if they were being insubordinate. Plaintiff tried this, but it only resulted in her employees becoming more hostile towards her.

28. On or about January 4, 2020, Defendant finally acted to provide Plaintiff with her standing desk accommodation. However, when setting up the desk, Defendant informed Plaintiff that additional parts needed to be ordered, which would arrive quickly. On or about February 4, 2020, Plaintiff Emailed Frederick Nocella, Occupational Health and Safety Specialist as wells as Lisa Spruill ("Lisa") DHS Senior Departmental HR Associate, to inquire as to why she had not received an update about her desk and to ask how much longer she would need to wait.

29. In or about January 2020, Defendant suspended Kim for misconduct. After Defendant informed Kim about her suspension, Kim filed harassment charges against Plaintiff. On or about February 12, 2020, Plaintiff emailed Frank and Cheryl to request that when Kim returned from suspension, she be supervised by an alternate supervisor until her issues with Kim were resolved.

30. Between 2019 and 2020, two (2) of Plaintiff's employees, Andrea Bishop ("Andrea") and Shequoya were investigated for serious discplinary infractions. One of them was eventually terminated and the other was suspended and transferred. Plaintiff had told Defendant's management about the poor work and inappropriate behavior of these two (2) employees several months prior to Defendant deciding to investigate them.

31. In or about May 2020, Defendant finally transferred Plaintiff to a new unit after multiple requests she made over the course of nearly a year.

32. In or about September 14, 2020, Plaintiff was informed that Andrea and Shequoya had filed claims of sexual harassment against her based on workplace incidents that had allegedly started years prior in 2017 and 2018. Plaintiff viewed these complaints against her as retaliation; Plaintiff had been the one who reported these two (2) employees for the infractions that had eventually resulted in their disciplinary action, and she was actively involved in the investigations into their conduct.

33. The sexual harassment investigation and hearing were delayed significantly due to COVID-19, during which time Plaintiff was forced to live with the stress of these outstanding serious allegations.

34. In or about September 27, 2021, Defendant temporarily removed Plaintiff from her supervisory role pending a hearing on the allegations.

35. In or about November 18, 2021, Defendant held an administrative hearing on the sexual harassment allegations. Despite Andrea and Shaquoya failing to provide any direct evidence substantiating their claims, Defendant determined that Plaintiff had engaged in inappropriate conduct in violation of their internal policies.

36. In or about February 7, 2022, Defendant informed Plaintiff that she would be suspended

for thirty (30) days based on information obtained in the administrative hearing. Defendant did not provide an explanation as to why Plaintiff was given a 30-day suspension instead of a standard 15 day suspension.

37. In or about February 16, 2022, Defendant decided to demote Plaintiff from a Social Worker Supervisor to a regular Social Worker. This demotion included a decrease in salary.

38. Plaintiff appealed her demotion and suspension to her union. In or about March 10, 2022, Plaintiff attended a grievance hearing with Defendant, and Defendant upheld both her demotion and suspension.

39. Plaintiff's mental health has deteriorated due to the stress and anxiety of being accused of sexual harassment, having to participate in said investigation, and experiencing unfair discipline.

40. In or about March 8, 2022, Plaintiff's primary care doctor confirmed to Defendant that Plaintiff had been diagnosed with anxiety and prescribed antidepressants due to work-related stress from ongoing harassment.

41. Due to the exacerbation of her mental health condition, Plaintiff used 97.5 days of her intermittent medical leave in 2022, which is the most she has used in the past several years.

42. Due to being demoted and receiving less income, Plaintiff has experienced financial loss. In March 2022, Plaintiff was forced to take out two (2) personal loans in order to pay her bills.

## COUNT I- DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

43. The preceding paragraphs are incorporated herein by reference as though set forth in full.

44. Defendant was aware that Plaintiff suffered from a qualified disability and recurring symptoms.

45. Based on the foregoing, Plaintiff alleges that Defendant discriminated against Plaintiff in violation of the ADA when they failed to engage in the interactive process or reasonably accommodate her after she informed them multiple times that her work condition was exacerbating her qualified disabilities.

46. Specifically, Plaintiff's disabilities were exacerbating by the stress of having to deal with Kim, an unruly employee with a discplinary history whom Defendant had placed under Plaintiff's supervision without any prior warning or engagement in conversation.

47. Plaintiff first requested the accommodation of having Kim transferred out of her unit. When Defendant refused this accommodation, Plaintiff then requested that she personally be transferred to another unit.

48. Defendant refused to engage in an interactive process with Plaintiff to find a reasonable accommodation, during which time Plaintiff's disabilities were exacerbated.

49. Defendant eventually transferred Plaintiff to another unit in May 2020, but their refusal to accommodate Plaintiff in a timely manner additionally resulted in continued harassment by certain employees, culminating in baseless sexual harassment complaints against

Plaintiff.

50. Defendant's actions caused Plaintiff to experience financial losses, emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

### COUNT II - DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

51. The preceding paragraphs are incorporated herein by reference as though set forth in full.

52. Defendant was aware that Plaintiff suffered from a qualified disability and recurring symptoms.

53. Based on the foregoing, Plaintiff alleges that Defendant discriminated against Plaintiff in violation of the ADA when they failed to provide her with a standing desk accommodation for over two (2) years.

54. Plaintiff first requested an accommodation for standing desk in October 2017. Defendant approved this request, but failed to actually provide the agreed upon accommodation.

55. On or about May 2019, Plaintiff's primary care doctor sent Defendant a letter requesting that they provide Plaintiff's standing desk accommodation

56. On or about January 2020, Defendant finally provided the accommodation

57. Defendant's failure to provide Plaintiff's standing desk accommodation for twenty-six (26) months resulted in Plaintiff experiencing financial losses, emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

### COUNT III -RETALIATION IN VIOLATION OF THE ADA

58. The preceding paragraphs are incorporated herein by reference as though set forth in full.

59. Defendant was aware that Plaintiff suffered from a qualified disability and recurring symptoms.

60. Based on the foregoing, Plaintiff alleges that Defendant retaliated against her in violation of the ADA when Defendant forced Plaintiff to remain in a hostile work environment and then suspended and demoted her, after she reported to them that her work environment was impacting her health and disabilities and continuously inquired about her standing desk accommodation.

61. Defendant's actions caused Plaintiff to experience financial loss, emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

### COUNT IV- VIOLATION OF THE FMLA

62. The preceding paragraphs are incorporated herein by reference as though set forth in full.

63. Based on the foregoing, Plaintiff alleges that Defendant violated the FMLA when the retaliated against Plaintiff for her repeated use of medical leave for her qualified disability, when they failed to adequately assist her despite her reports about her unruly subordinates, by demoting her.

64. Defendant's actions caused Plaintiff to experience financial loss, emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court grant her the following relief from Defendant:

(a)  Compensatory damages;

(b)  Punitive damages (where applicable);

(c)  Liquidated damages (where applicable);

(d)  Damages for emotional pain and suffering;

(e)  Recoverable costs;

(f)  Pre and post judgment interest.

Respectfully submitted,

_____
Shermaine Harvey
Pro Se Plaintiff

Date: May 17, 2023

## **VERIFICATION**

I, Shermaine Harvey, hereby verify that I am the Plaintiff in the within Complaint and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that false statements are made to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

*[signature]*
Shermaine Harvey
Plaintiff

Date: May 17, 2023